UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ANTHONY BRIAN MALLGREN,

                        Plaintiff,           **MEMORANDUM & ORDER**
                                                                   13-CV-2211 (MKB)

           v.

AMERICAN PSYCHIATRIC ASS'N and
NORTH SHORE LI JEWISH HEALTH SYS.,

                        Defendants.

-----------------------------------------------------------------

ANTHONY BRIAN MALLGREN,

                        Plaintiff,
                                                                 13-CV-2214 (MKB)
           v.

THE UNITED STATES OF AMERICA,

                        Defendant.

-----------------------------------------------------------------

ANTHONY BRIAN MALLGREN,

                        Plaintiff,
                                                                 13-CV-2215 (MKB)
           v.

JOHN DOE(S),

                        Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       On April 8, 2013, Plaintiff Anthony Brian Mallgren, who was then committed at the Zucker Hillside Hospital in Glen Oaks, New York, brought three separate *pro se* actions against the American Psychiatric Association and North Shore Long Island Jewish Hospital, the United

States, and John Doe Defendants from the New York State Department of Health Centralized Hospital Intake Program. The Court grants Plaintiff's requests to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the Complaints are dismissed. Plaintiff is warned that the future filing of vexatious and frivolous litigation may result in sanctions, including limitations on filing.

## I. Background

At the time he filed the three above-captioned Complaints, Plaintiff was being held at the Zucker Hillside Hospital, a psychiatric facility in Glen Oaks, New York operated by North Shore Long Island Jewish Health System. The Complaints challenge the conditions of confinement at the facility and allege limitations on Plaintiff's access to the courts. The Court takes judicial notice of the fact that Plaintiff was subsequently released from confinement a few days after filing these actions. Plaintiff filed additional motions in other cases pending before the Court, in person at the Eastern District of New York courthouse, on April 11, 2012. *See Mallgren v. Louis Vuitton North America, Inc. et al.*, No. 13-CV-416, Docket Entry No. 12; *Mallgren v. New York City*, No. 13-CV-724, Docket Entry No. 32.

Plaintiff has an extensive history of litigation in this Court. Plaintiff has filed fifteen different actions since January 23, 2013. *See Mallgren v. Louis Vuitton North America, Inc. et al.*, No. 13-CV-416 (E.D.N.Y. Jan. 30, 2013) (transferred to the United States District Court for the Central District of California and later dismissed, No. 13-CV-706, slip op. (C.D. Cal. Feb. 12, 2013)), transfer appealed to the Second Circuit, which dismissed the appeal, for failure to pay the filing fee, No. 13-CV-709 (2d Cir. Apr. 5, 2013)); *Mallgren v. New York City*, No. 13-CV-724, 2013 WL 816236 (E.D.N.Y. Mar. 4, 2013) (dismissed in part, and leave to file an amended complaint granted), *appeal dismissed* (2d Cir. July 24, 2013); *Mallgren v. Metropolitan*

*Transportation Authority*, No. 13-CV-986 (pending); *Mallgren v. Motion Recruitment Partners Inc., et al.*, No. 13-CV-1054, 2013 WL 1873304 (E.D.N.Y. May 2, 2013) (dismissed for lack of subject matter jurisdiction), *appeal dismissed* (2d Cir. July 24, 2013); *Mallgren v. John Doe Corporation*, No. 13-CV-1265, 2013 WL 1873319 (E.D.N.Y. May 2, 2013) (dismissed as frivolous and for failure to state a claim), *appeal dismissed* (2d Cir. July 24, 2013); *Mallgren v. Bloomberg, et al.*, No. 13-CV-1466, 2013 WL 1873334 (E.D.N.Y. May 2, 2013) (same), *appeal dismissed* (2d Cir. July 24, 2013); *Mallgren v. American Psychiatric Association, et al.*, No. 13-CV-2211 (pending); *Mallgren v. United States*, No. 13-CV-2214 (pending); *Mallgren v. John Doe(s)*, No. 13-CV-2215 (pending); *Mallgren v. Sprint Nextel Corp.*, No. 13-CV-2477 (pending); *Mallgren v. U.S. Court Clerk*, No. 13-CV-2654 (pending); *Mallgren v. Marriott International, Inc.*, 13-CV-2727 (pending); *Mallgren v. Mallgren*, No. 13-CV-2728 (pending); *In re Anthony Brian Mallgren*, No. 13-CV-3622 (pending); *Mallgren v. Bowery Residents Committee Inc.*, No. 13-CV-6621 (pending).

Plaintiff has also filed multiple actions in the United States District Courts for the Eastern District of Washington and Southern District of New York. *See Mallgren v. Clerk's Office*, No. 13-CV-0210, 2013 WL 3553397, at *2 (E.D. Wash. July 11, 2013) ("The Court recognizes that Plaintiff has filed at least 29 cases in the United States District Courts and 12 cases in the Circuit Courts of Appeal, this year. This case is one of eight actions which have been filed in this District since May 10, 2013."); *Mallgren v. New York State Supreme Court*, No. 12-CV-7240, slip op. (S.D.N.Y. Nov. 13, 2012) (dismissed for lack of subject matter jurisdiction, for failure to state a claim upon which relief may be granted, and because the defendant is immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)); *Mallgren v. New York State Supreme Court, et al.*, No. 12-CV-7404, 2013 WL 586857 (S.D.N.Y. Feb. 11, 2013) (dismissed for failure to

3

comply with filing requirements); *Mallgren v. Intellectual Ventures*, No. 12-CV-7447, slip op. (S.D.N.Y. Nov. 7, 2012) (dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)); *Mallgren v. Microsoft, et al.*, No. 12-CV-7517, slip op. (S.D.N.Y. Oct. 3, 2013) (dismissed for lack of subject matter jurisdiction and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)), *appeal dismissed* (2d Cir. Dec. 11, 2013); *In Re Anthony Brian Mallgreen*, No. 13-CV-1124, slip op. (S.D.N.Y. March 6, 2013) (dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)), *appeal dismissed* (2d Cir. July 30, 2013); *Mallgren v. New York Hospital*, No. 13-CV-1763 (S.D.N.Y. May 13, 2013) (dismissed for lack of subject matter jurisdiction; appeal pending); *Mallgreen v. Parties in this petition*, No. 13-CV-3660 (S.D.N.Y. Aug. 1, 2013) (denying petition for discretionary exemption from user access fees for the Court Electronic Records (PACER) system). Plaintiff also filed suit in the United States District Court for the District of Columbia, purporting to challenge the procedures of the United States Supreme Court. *See Mallgren v. Suter*, No. 13-CV-1200, 2013 WL 4033704 (D.D.C. Aug. 2, 2013) (dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)).

On March 28, 2013, Plaintiff filed a document titled "Partially Amended Complaint" and dated March 26, 2013 in *Mallgren v. New York City*, Docket No. 13-CV-724 (No. 13-CV-724, Docket Entry No. 29-1), which provides some information about the circumstances that led to Plaintiff's confinement at Zucker Hillside Hospital.[1] According to the Partially Amended

---

[1] The Court did not have jurisdiction over the motion to amend the complaint or any other motions related to the order dated March 4, 2013 in Docket No. 13-CV-724 while the appeal was pending. *See Negron v. United States*, 394 F. App'x 788, 792 (2d Cir. 2010) ("[I]t is well-established that '[t]he filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" (citing *Griggs v. Provident Consumer*

Complaint and an earlier motion filed in the same case, Plaintiff received an airline ticket from Project Reconnect, a program through the New York City Department of Homeless Services, to allow him to fly to Spokane, Washington, on March 20, 2013. (No. 13-CV-724, Docket Entry No. 27, Mar. 20, 2013 Motion for Emergency Injunctive Relief ¶¶ 3, 6; Docket Entry No. 29-1, Mar. 28, 2013 Partially Amended Complaint ¶ 1.) Plaintiff claims that he was arrested by officers from the Port Authority of New York and New Jersey at JFK airport and then detained by emergency medical responders from the Fire Department of New York. (No. 13-CV-724, Docket Entry No. 29-1, Mar. 28, 2013 Partially Amended Complaint ¶¶ 11, 13.) Plaintiff was allegedly taken to the Zucker Hillside Hospital, admitted to the psychiatric unit, and "converted to involuntary status" and was "held against [his] will." (*Id.* ¶ 15.) Plaintiff demanded release from involuntary confinement and other injunctive relief and damages. On April 8, 2013, Plaintiff filed a motion for injunctive relief about the conditions of confinement, forced medication, and his lack of access to postage and computer equipment at Zucker Hillside Hospital. (No. 13-CV-724, Docket Entry No. 31, April 8, 2013 Motion for Injunctive Relief.) On April 11, 2013, Plaintiff filed another motion for injunctive relief, stating that he had been discharged from the hospital on April 8, 2013 and seeking to enjoin any authority from taking

---

*Discount Co.*, 459 U.S. 56, 58 (1982)); *Hernandez v. Coughlin,* 18 F.3d 133, 138 (2d Cir. 1994) (district court lacked jurisdiction to rule on a motion to amend a complaint after a notice of appeal was filed); *see also Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002) (stating that "[t]he district court could not rule on any motion affecting an aspect of the case that was before [the Second Circuit], including a motion to amend the motion, while that appeal was pending); *Ramirez v. United States*, No. 05-CV-4179, 2013 WL 247792, at *2 (S.D.N.Y. Jan. 22, 2013) (citing *Ching*, 298 F.3d at 180, for the proposition that "the filing of a Notice of Appeal divests [the district court] of jurisdiction over petitioner's original . . . motion"). The Court of Appeals dismissed the appeal on July 24, 2013, because a final order had not been issued by this Court. (No. 13-CV-724, Docket Entry No. 37, Mandate issued Aug. 14, 2013.)

him into custody. (No. 13-CV-724, Docket Entry No. 32.) Plaintiff attached his discharge form as an exhibit to his motion. (*See id.*)

Each of Plaintiff's instant Complaints names different Defendants. In the Complaint filed in Docket No. 13-CV-2211, dated April 2, 2013, Plaintiff names the American Psychiatric Association and the North Shore Long Island Jewish Hospital as Defendants. The Complaint states: "Mallgren observed many faulty practices, supposedly prescribed by the American Psychiatric Association that caused a prognosis through diagnosis or controlled environmental factors, such as access to personal hygiene supplies, temperature controlled invocation, access to court hearings, or the denial or prolongation thereof, notification of meals, or the failure to do so and other such practices and patient interactions." (No. 13-CV-2211, Complaint, Background Information, ¶ 3.) The Complaint alleges that the practices employed at psychiatric facilities, jails, and shelters may contribute to "disorders, diseases and/or emotional damage." (*Id.* ¶ 4.) The only specific allegation lodged against any individual is a reported conversation between "McDonald," who brought him to the Zucker Hillside facility, and the admitting nurse, who is alleged to have queried "What are we suppose[d] to do with him if he doesn't have any psychiatric history?" (*Id.* ¶ 2.)

In the Complaint against the United States, Docket No. 13-CV-2214, filed on April 8, 2013, Plaintiff states that "constitutional vulnerabilities result in voided citizenship and the decoupling of governed efficiencies for individuals through the exploitation of limited jurisdictional access and insight where statutory and regulative means prevent the application of the constitutional abstract our forefathers articulated." (No. 13-CV-2214, Complaint.) The Complaint includes vague assertions of "circumventing due process" and "punitive measures may be considered cruel and unusual punishment," but does not provide specific details of any

6

alleged constitutional deprivation. (*Id.*) Plaintiff alleges that "all mail is currently being held at the front desk." (*Id.*) He states that "mail has been held since the 28th of March, 2013, it being April 5th, 2013 as this claim is being written." (*Id.*, Claim Details ¶ 4.) Plaintiff does not identify the pieces of mail that were allegedly delayed. However, he makes reference to his federal court cases and states that "there is no sufficient measures [sic] in place to ensure access to Federal Jurisdiction." (*Id.*) Plaintiff further alleges that he contacted several organizations and government offices to raise his concerns about the mail. (*Id.*, Claim Details ¶ 5; Exhibit A, Call Log.) He alleges that the Federal Bureau of Investigations informed him that "holding mail did not constitute obstructing justice." (No. 13-CV-2214, Complaint, Claim Details ¶ 6.) Plaintiff states that "our Federal Government has turned a blind eye to its citizens." (*Id.*, Practical Substantiation.)

In the Complaint in Docket No. 13-CV-2215, dated April 8, 2013, Plaintiff names unspecified John Does from the New York State Department of Health Centralized Hospital Intake Program. Plaintiff alleges that he "placed several calls to the Centralized Hospital Intake Program to file complaints, report problems and discuss concerns, none of which have been satisfactorily remedied." (No. 13-CV-2215, Complaint, Background Information ¶ 7.) Plaintiff asserts that he called "about concerns with mail being held, not receiving the 'Your Rights as a Hospital Patient in New York State' . . . , not being notified when meal food was being served, his room temperature being so warm as to discourage sleep and other such issues." (*Id.* ¶ 9.) Plaintiff alleges that he also called the Mental Hygiene Legal Service to request help in filing motions in federal or state courts and was denied assistance, leaving him "without legal remedy for these transgressions." (*Id.* ¶¶ 12–13.) Plaintiff alleges that these failings violate his right to due process and constitute cruel and unusual punishment. (*Id.* ¶¶ 15–16.)

Each Complaint purports to incorporate by reference prior cases, including Docket No. 13-CV-724, which included the later documents describing Plaintiff's experience with his involuntary commitment beginning on March 20, 2013. The Complaints each request unspecified monetary damages and injunctive relief requiring "all applicable organizations being issued cease and desist orders" (No. 13-CV-2211, Complaint), adherence to "proper statutes, regulation and organizations" (No. 13-CV-2214, Complaint), and "court ordered review" (No. 13-CV-2215, Complaint).

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the court must screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and, thereafter, "dismiss the complaint, or any portion of the complaint," if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A; *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

2007).  Similarly, the court is required to dismiss *sua sponte* an *in forma pauperis* action, if the court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *Abbas*, 480 F.3d at 639.

A plaintiff seeking to bring a lawsuit in federal court must establish that the Court has subject matter jurisdiction over the action.  *See, e.g.*, *Monreal v. New York*, 518 F. App'x 11 (2d Cir. 2013) (affirming dismissal of *pro se* complaint for failure to establish subject matter jurisdiction); *Zito v. New York City Office of Payroll Admin.*, 514 F. App'x 26, 27 (2d Cir. 2013) (same); *Chestnut v. Wells Fargo Bank, N.A.*, No. 11-CV-5369, 2012 WL 1657362, at * 3 (E.D.N.Y. May 7, 2012) ("Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking.").  "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed."  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) (citations omitted).  Federal subject matter jurisdiction is available only when a "federal question" is presented, or when plaintiffs and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000.  28 U.S.C. § 1331 and § 1332.  In order to invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

### b. Improper Defendants

Plaintiff's allegations regarding the conditions of his confinement and his access to the courts could suggest a claim for deprivation of his constitutional rights under 42 U.S.C. § 1983.  To state a claim pursuant to Section 1983, a plaintiff must allege that the challenged conduct was

"committed by a person acting under color of state law," and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 applies to state actors, not federal officials. However, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), permits recovery for some constitutional violations by federal agents, even in the absence of a statute conferring such a right. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 66 (2001) ("In *Bivens* . . . we recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."); *Vasquez v. Klie*, No. 03-CV-3905, 2012 WL 1107306, at *5 (S.D.N.Y. Mar. 30, 2012) ("Under *Bivens* and its progeny, federal courts can hear suits for money damages against federal government officials accused of violating constitutional rights."), *aff'd*, 2013 WL 850236 (2d Cir. Mar. 8, 2013). Under both Section 1983 and *Bivens*, a plaintiff's claims generally must be brought against the individuals personally responsible for the alleged deprivation of his constitutional rights, not against the government entities or agencies where those individuals are employed. A plaintiff seeking to recover money damages "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678.

Plaintiff's three above-captioned Complaints do not identify any individual defendant who could be held liable for the alleged deprivation of his constitutional rights. The American Psychiatric Association and the North Shore Long Island Jewish Health System are both private entities that are not ordinarily amenable to suits for damages pursuant to 42 U.S.C. § 1983. *See Anderson v. North Shore Long Island Jewish Healthcare System's Zucker Hillside Hosp.*,

10

No. 12-CV-1049, 2013 WL 784391, *12 (E.D.N.Y. Jan. 23, 2013) ("Private hospitals . . . have consistently been held to be 'private actors' in the § 1983 context."); *Ganthier v. North Shore-Long Island Jewish Health System*, 298 F. Supp. 2d 342, 348 (E.D.N.Y. 2004) (dismissing § 1983 claims against North Shore-Long Island Jewish Health System because it is a private actor). As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted); *see also Franks v. Laquila Grp. Inc.*, No. 13-CV-980, 2013 WL 790544, at *2 (E.D.N.Y. Mar. 4, 2013) (quoting *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 50); *Elufe v. Lyons*, No. 10-CV-2638, 2010 WL 2606649, at *1 (E.D.N.Y. June 18, 2010) (same). Plaintiff has not alleged that the hospital or its staff members or the American Psychiatric Association were state actors, were acting in concert with state actors, or were serving as an instrumentality of the state. *See, e.g.*, *Kia P. v. McIntyre*, 235 F.3d 749, 755–57 (2d Cir. 2000) (private hospital was not a state or municipal facility and thus was not liable pursuant to § 1983, unless it was acting as an instrumentality of the state). Moreover, the only claim against the American Psychiatric Association, a private organization, is that it "supposedly prescribed" unspecified "faulty practices" at mental health facilities. (No. 13-CV-2211, Complaint ¶ 3.) Plaintiff fails to state a claim against either of the private entities named in the Complaint filed in Docket No. 13-CV-2211.

Plaintiff's Complaint in Docket No. 13-CV-2214 names the United States as a defendant, but fails to state a claim against the United States or any federal agent. The only allegations against any federal entity are Plaintiff's vague assertion that "our Federal Government has turned a blind eye to its citizens" and his claim that "the Federal Bureau of Investigation stated that

holding mail did not constitute obstructing justice." (No. 13-CV-2214, Complaint, Practical Substantiation and Claim Details ¶ 6.) Plaintiff has not identified any individual federal agent, nor has he demonstrated that any federal government entity has violated his constitutional rights. Plaintiff fails to state a claim against the United States in the Complaint filed in Docket No. 13-CV-2214.

Plaintiff's Complaint in Docket No. 13-CV-2215 names John Doe(s), "an unknown individual or individuals within the New York State Department of Health" who "were negligent, reckless or malicious in their fielding, recording and resolving of request[s] and complaints." (No. 13-CV-2215, Complaint, Jurisdiction ¶¶ 2, 4.) Plaintiff alleges that the Centralized Hospital Intake Program, an agency within the Department of Health, failed to resolve his complaints to his satisfaction. (*Id.*, Background Information ¶¶ 8–12, 14.) The Court declines to attempt to identify the John Doe defendants, as Plaintiff fails to state a claim against them, as set forth below.

### c. Conditions of Confinement

Plaintiff's vague allegations about "controlled environmental factors" fail to state a claim related to the conditions of his confinement. Prisoners have constitutionally protected rights to receive adequate food, clothing, shelter, medical care, and security. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Bess v. R.N.D.C.*, No. 11-CV-6272, 2012 WL 34100, at *2 (E.D.N.Y. Jan. 6, 2012), *appeal dismissed* (July 6, 2012). Humane conditions of confinement are guaranteed by the Eighth Amendment's prohibition against cruel and unusual punishment of convicted prisoners. Pre-trial detainees in state custody and persons who are subject to civil commitment are protected by the Due Process Clause of the Fourteenth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) ("Persons who have been involuntarily committed are

entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."); *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (detainees in state custody are protected against mistreatment by prison officials under the Due Process Clause of the Fourteenth Amendment); *Groves v. Davis*, No. 11-CV-1317, 2012 WL 651919, at *3 (N.D.N.Y. Feb. 28, 2012) (applying the Eighth Amendment standard to the Fourteenth Amendment claims of a plaintiff subject to involuntary civil commitment in a mental health facility). A claim for inhumane conditions of confinement may assert a constitutional violation where it alleges "unquestioned and serious deprivations of basic human needs" or denial of "the minimal civilized measure of life's necessities." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see Vogelfang v. Capra*, 889 F. Supp. 2d 489, 504 (S.D.N.Y. 2012) (quoting *Anderson*, 757 F.2d at 35); *Bess*, 2012 WL 34100, at *2 (quoting *Rhodes*, 452 U.S. at 347). In addition to the seriousness of the deprivation, the court may also consider its duration. *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Hallett v. Davis*, No. 11-CV-4646, 2012 WL 4378020, at *3 (S.D.N.Y. Sept. 25, 2012) (quoting *Hutto*, 437 U.S. at 686).

In the Complaint filed in Docket No. 13-CV-2211, Plaintiff complains that he "observed many faulty practices . . . such as access to personal hygiene supplies, temperature controlled invocation, . . . [and] notification of meals." (No. 13-CV-2211, Complaint, Background Information, ¶ 3.) Plaintiff's allegations concerning his involuntary commitment — approximately nineteen days — do not allege a serious deprivation of basic human needs that would suggest a violation of his constitutional rights.

### d. Access to the Courts

Plaintiff's allegations of lack of "access to court hearings," and "access to reasonable legal resources and/or aide" and "having all mail held at the front desk," do not state a claim based on deprivation of the right of access to the courts. Prisoners, detainees, and individuals subject to civil commitment have a First Amendment right of access to the courts and a number of derivative rights, including the right to access legal materials and legal research and to send and receive legal mail. *See Lewis v. Casey*, 518 U.S. 343, 350–353 (1996) (discussing right of access to law libraries and assistance for prisoners); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (discussing right of access to legal mail for prisoners); *see also Dorsey v. Hogan*, 511 F. App'x 96, 98–101 (2d Cir. 2013) (discussing right of access to law library access for individual subject to civil commitment); *Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) (discussing right of access to legal mail for individual subject to civil commitment).

To state a claim for denial of access to the courts, including interference with mail, a plaintiff must allege that the defendant "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." *Goord*, 320 F.3d at 351 (internal quotation marks and alterations omitted) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)); *see also Ahlers*, 684 F.3d at 64 (2d Cir. 2012) (applying *Davis*, 320 F.3d at 351, to the context of civil commitment and holding that "[a] patient must show regular and unjustifiable interference with incoming legal mail"), *cert. denied,* 133 S. Ct. 466 (2012). The plaintiff must also show that the defendant's actions resulted in actual injury, "such as the dismissal of an otherwise meritorious legal claim." *Razzoli v. Executive Office of U.S. Marshals*, No. 10-CV-4269, 2010 WL 5051083, at *4 (E.D.N.Y. Dec. 2, 2010) (quoting *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)); *see also Walker v. Schriro*, No. 11-CV-9299, 2013 WL 1234930,

at *11 (S.D.N.Y. Mar. 26, 2013) ("In other words the plaintiff must show that a non-frivolous legal claim had been frustrated or was being impeded due to the actions of prison officials." (citation and internal quotation marks omitted)).

Plaintiff has not shown any actual injury arising from the alleged delay in sending mail. He claims that his mail was delayed beginning March 28, 2013. The instant Complaints were dated April 2, 5, and 8 and filed in this Court on April 8, 2013. Plaintiff has not alleged that any other pending litigation has been delayed or disrupted or that he has suffered any other harm as a result of a minor delay in his ability to send mail. As Plaintiff has failed to allege an actual injury, his access to court claim is dismissed for failure to state a claim.

### e. Frequent Frivolous Litigation

Of the fifteen cases Plaintiff has filed in this Court since January 23, 2013, with entry of this Memorandum and Order, six will have been dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) or for lack of subject matter jurisdiction. By Orders dated May 2, 2013 in *Mallgren v. Motion Recruitment Partners Inc., et al.*, No. 13-CV-1054; *Mallgren v. John Doe Corporation*, No. 13-CV-1265; and *Mallgren v. Bloomberg, et al.*, No. 13-CV-1466, Plaintiff was warned that the future filing of vexatious and frivolous litigation may result in sanctions, including the imposition of an injunction prohibiting him from making future filings seeking *in forma pauperis* status without leave of the Court. The federal courts have limited resources. Frequent frivolous filings work to diminish the ability of the courts to manage their dockets for the efficient administration of justice. "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229

F.3d 121, 123 (2d Cir. 2000) (citations and internal quotation marks omitted). Plaintiff is again warned that the future filing of vexatious and frivolous litigation may result in sanctions, including the imposition of an injunction prohibiting him from making future filings seeking *in forma pauperis* status without leave of the Court. *See In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) ("With respect to civil litigation, courts have recognized that the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints."); *see also Amaker v. Haponik*, 125 F. App'x 375, 376 (2d Cir. 2005) (warning plaintiff that "filing of frivolous appeals . . . may result in the imposition of leave-to-file sanctions," as "[s]uch a measure is appropriately applied to those litigants who have a 'clear pattern of abusing the litigation process by filing vexatious and frivolous complaints'" (quoting *In re Sassower*, 20 F.3d at 44)); *In re Knows*, No. 12-CV-1908, 2012 WL 2923317, at *2 (E.D.N.Y. July 18, 2012) (putting plaintiff "on notice that any future filing of vexatious or frivolous complaints with the court may lead the court to impose an injunction prohibiting her from filing a complaint without the court's prior authorization" (citing *In re Sassower*, 20 F.3d at 44)).

### III. Conclusion

For the foregoing reasons, all of Plaintiff's claims contained in the three above-captioned Complaints are dismissed for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any

appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 11, 2014
Brooklyn, New York